## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Michele Rangel,                          *

                        Plaintiff,   *   Case No. 2:17-cv-473

v.

                                *   Judge Sarah D. Morrison

Paramount Heating & Air
Conditioning, LLC, et al.,               *   Magistrate Judge Chelsey M. Vascura

                  Defendants.   *

### PLAINTIFF'S COUNSEL'S POST-TRIAL MOTION FOR
### AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS

Pursuant to this Court's Order dated January 13, 2020 (ECF No. 87) following the jury trial which concluded in a verdict in favor of Plaintiff Michele Rangel ("Plaintiff" or "Rangel") against Defendants Paramount Heating & Air Conditioning, LLC ("Paramount") & William E. Brown, III ("Brown") (collectively "Defendants"), Plaintiff, by and through undersigned counsel, respectfully move this Court, pursuant to 29 U.S.C. §216(b) and Ohio Revised Code §4111.10, for an award of attorneys' fees and costs in connection with a successful Judgment in this matter. (ECF No. 86) Further, Plaintiff also submits federal jurisprudence in support of awarding further compensation under the Ohio Prompt Pay Act. A Memorandum in Support is attached.

Respectfully submitted,

/s/ Matthew J.P. Coffman
Matthew J.P. Coffman (0085586)
**COFFMAN LEGAL, LLC**
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

/s/ Daniel I. Bryant
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-704-0546
Fax: 614-573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

Page No.

**TABLE OF CONTENTS**……………………………………………………………...i

**INDEX OF AUTHORITIES**………………………………………………………………ii

**INTRODUCTION**…………………………………………………….........................1

**BACKGROUND**……………………………………………………………………2

    A.  Efforts to Settle Plaintiff's Claims Early in the Litigation and Multiple Times Following the Court's denial of Summary Judgment……………………………………………...4

    B.  Discovery Disputes and the Parties Move for Summary Judgment………………………6

    C.  Unanticipated Discovery Issues Following Summary Judgment Prior to Trial…………9

    D.  Trial Preparation………………………………………………………………10

    E.  Trial Proceedings………………………………………………………………...11

**LAW AND ARGUMENT**………………………………………………………………1

    A.  Applicable Standard for Evaluating Attorney Fees and Costs under the FLSA – Reasonableness using the Lodestar Analysis…………...………………………13

    B.  Plaintiff's Counsel's Hourly Rates are Reasonable and have been Approved by this Court……………………………………………………………………………18

    C.  Analysis of Factors Used to Evaluate an Award of Attorneys' Fees Supports Court Approval of the Requested Fee Recovery…………………………………………...19

        1.  The Value of the Benefit Rendered to the Plaintiff from a Jury Verdict Supports the Award of the Requested Attorney Fees……………………………………...20

        2.  The Hours Expended are Reasonable…………………………………………21

        3.  Society's Stake in Rewarding Attorneys Who Produce Such Benefits Also Supports the Award of the Requested Attorney Fees…………………………22

        4.  The Fact that the Services Were Undertaken on a Contingent Fee Basis Also Supports the Award of the Requested Attorney Fees…………………………23

        5.  The Value of the Services of an Hourly Basis also Supports the Award of the Requested Attorney Fees……………………………………………………...24

i

6.   The Complexity of the Litigation Also Supports the Award of the Requested Attorney Fees……………………………………………………………………25

7.   The Professional Skill and Standing of Counsel…………………………………26

D.   Plaintiff's Counsel's Costs and Expenses are Reasonable because they were necessary and integral to the successful prosecution of Plaintiff's claims..................................27

E.   The Ohio Prompt Pay Act Applies to Defendants because the Unpaid Overtime Compensation was no longer in "dispute" after the Jury returned a Favorable Verdict on January 8, 2020……………………………………...……...........................27

F.   Post-Judgment Interest is Appropriate beginning January 9, 2020 – the date of the Judgment……………………………………………………………………..28

**CONCLUSION**………………………………………………………………………30
**CERTIFICATE OF SERVICE**………………………………………………………..30

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343 (6th Cir. 2000)… …………………17-18, 24

*Adkins v. Asbestos Corp., Ltd.,* 18 F.3d 1349 (6th Cir.1994)…… ………………………………30

*Albers v. Tri-State Implement, Inc.,* 2010 U.S. Dist. LEXIS 23450 (D.S.D. Mar. 12, 2010)…….16

*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co*., 684 F.Supp. 953 (6th Cir. 1988)……………18

*Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482 (6th Cir. 2001)……………31

*Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005)… ………………………………………18

*Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465 (9th Cir. 1983)………………………………16

*Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019)………………………………………………………………………………………19

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001)………………………………………………………………………………..21

*Burcham v. Taubra Corp.*, No. 3:17-cv-168, 2018 WL 3840827 (S.D. Ohio Aug. 13, 2018) (Rose, J.)……………………………………………………………………………………………..16-17

*City of Riverside v. Rivera,* 477 U.S. 561, 574 (1986)…………………………………………15

*Coffey v. Unum Life Ins. Co.*, 302 F.3d 576 (6th Cir. 2002)……………………………………..30

*Cox v. Brookshire Grocery Co.,* 919 F.2d 354 (5th Cir. 1990)……………………………………..16

*Craig v. Bridge Bros. Trucking, LLC*, 823 F.3d 382 (6th Cir. 2016)……………………………28

*Cruz v. Vel-A-Da, Inc*. Case No. 3:90CV7087, 1993 WL 659253 (N.D. Ohio May 14, 1993)…..14

*Dowling v. Litton Loan Servicing, LP*, No. Case No. 05-cv-098, 2008 WL 906042 (S.D. Ohio Mar. 31, 2008)…………………………………………………………………………………………17

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991)……………………………………………………………………………………… 15

*Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)…………………………………………………………………...passim

*Florists' Mut. Ins. Co. v. Ludy Greenhouse Mfg. Corp.*, 521 F.Supp.2d 661 (S.D. Ohio 2007)…..31

*Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, Doc. 819 (N.D. Ala. Feb. 17, 2009).........15

*Fulkerson v. Yaskawa America, Inc.*, No. 3:13-cv-130, 2015 WL 6408120 (S.D. Ohio Oct. 23, 2015), ...............................................................................................14

*Funk v. Airstream, Inc.*, No. 3:17-CV-260, 2019 WL 4599816 (S.D. Ohio Sept. 23, 2019) (Rice, J.)............................................................................................17, 19-20

*Geier v. Sunquist*, 372 F.3d 784 (6th Cir. 2004)..............................................................18

*Gonter v. Hunt Valve Company, Inc.*, 510 F.3d 610 (6th Cir. 2007)..................................18

*Griffin v. Leaseway Deliveries, Inc.*, 1992 U.S. Dist. LEXIS 20203 (E.D. Pa. Dec. 31, 1992)....16

*Hadix v. Johnson*, 65 F.3d 532 (6th Cir. 1995)................................................................18

*Heder v. City of Two Rivers*, 255 F.Supp.2d 947 (E.D. Wis. 2003)...............................15-16

*Hodgson v. Miller Brewing Co.*, 457 F.2d 221 (7th Cir. 1972)..........................................15

*Holyfield v. F.P. Quinn & Co.*, 1991 U.S. Dist. LEXIS 5293 (N.D. Ill. Apr. 22, 1991)............16

*Hunter v. City of Cooper Hill, Tenn..*, Case No. 1:09-cv-238, 2013 WL 5278673 (E.D. Tenn. Sept. 19, 2013)...........................................................................................19

*Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531 (6th Cir. 2008)..........................25

*In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752 (S.D. Ohio 2007)................24

*In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 1029 (S.D. Ohio 2001)....................24

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)..................................................................................................30-31

*King v. My Online Neighborhood, Inc.*, 2007 U.S. Dist. LEXIS 16135 (M.D. Fla. Feb. 20, 2007).................................................................................................16

*Lankford v. Reladyne, LLC*, No. 1:14-CV-682, 2016 WL 3640691 (S.D. Ohio June 29, 2016)....31

*Moore v. Freeman*, 355 F.3d 558 (6th Cir. 2004)...............................................................16

*Parks v. Cent. USA Wireless, LLC*, No. 1:17-CV-448, 2019 WL 4743648 (S.D. Ohio Sept. 29, 2019) (Barrett, J.).......................................................................................28

*Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 107 S. Ct. 3078 (1987)...18, 25

iv

*Perdomo v. Sears, Rosebuck & Co.,* Case No. 97-2822-CIV-T-17A, 1999 WL 1427752 (M.D. Fla. Dec. 3, 1999)………………………………………………………………………………..15

*Perrin v. John B. Webb & Assocs.,* Case No. 604CV399ORLKRS, 2005 WL 2465022 (M.D. Fla. Oct. 6, 2005)……………………………………………………………………………...15

*Project Vote v. Blackwel*l, Case No. 1:06-cv-1628, 2009 WL 917737 (N.D. Ohio Mar. 31, 2009)……………………………………………………………………………………..18

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)……………………………19

*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999)………………………………………………………17

*Snead v. Interim Healthcare of Rochester, Inc.*, 286 F.Supp.3d 546 (W.D.N.Y. 2018)…………25

*Stewart v. CUS Nashville, LLC,* Case No. 3:11-cv-342, 2014 WL 116593 (M.D. Tenn. Jan. 10, 2014)…………………………………………………………………………………..19

*Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782 (1989)………19

*United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307, et al. v. G & M Roofing and Sheet Metal Co., Inc*., 732 F.2d 495 (6th Cir. 1984)………14, 16

*Wales v. Jack M. Berry, Inc.,* 192 F.Supp.2d 1313 (M.D. Fla. 2001)……………………………15

*West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 657 F.Supp.2d 914 (S.D. Ohio 2009)…………………………………………………………………………………..26

*Whitesell Corp. v. Whirlpool Corp.*, 496 F. App'x 551 (6th Cir. 2012)…………………………31

*Wright v. Premier Courier, Inc.,* No. 2:16-CV-420, 2018 WL 3966253 (S.D. Ohio Aug. 17, 2018)…………………………………………………………………………………..23-27

**Statutes**

29 U.S.C. § 216(b)………………………………………………….........................14

28 U.S.C. § 1961(a)……. ………………………………………………………………30

Ohio Revised Code § 4111.10…….……………………………………………………..14

Ohio Revised Code § 4113.15……………………………………………………………28-29

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Plaintiff's counsel seeks a total attorneys' fee and costs award of **$181,207.38**, inclusive of the reimbursement of **$5,219.88** in out-of-pocket costs/expenses advanced by counsel.[1]  The Court should grant this application because: (1) the attorneys' fee award sought is appropriate in this case in view of the work performed and the results achieved; and (2) the requested expenses were incurred in the successful prosecution of this case and are reasonable.

The attorneys' fee analysis is based upon an hourly rate, the skill and efficiency of Plaintiff's counsel in obtaining an excellent result, the complexity of the litigation, and the risk of non-payment. As detailed herein, at the present time Plaintiff's counsel have incurred a lodestar fee and costs in excess of **$181,207.38** as of the date of this Motion. The requested expenses are reasonable and were incurred in furtherance of the litigation and settlement of the case, and, the hourly rates are reasonable and within the market rates in the Southern District of Ohio market for attorneys of similar skill and experience. *See* **Exhibit A** Coffman Declaration at ¶ 53-63; **Exhibit B** Bryant Declaration at ¶ 56-57; **Exhibit C** Draher Declaration at ¶ 7-11; and **Exhibit D** Knoll Declaration at ¶ 21-24.

To provide context, Plaintiff will explain the background and procedural posture of this case, the efforts made to resolve the case immediately after it was filed, Defendants' unwillingness to engage in any monetary offers until after the summary judgment stage and a week before trial, discovery deficiencies that caused Plaintiff to incur additional attorneys' fees, and trial.

---

[1] Of the total expenses incurred, Plaintiff has reimbursed counsel in the amount of **$2,058.07**. Plaintiff should be reimbursed for the costs/expenses borne by her. Counsel should also be reimbursed for the costs/expenses as outlined herein.

## II.  **BACKGROUND**

The parties have litigated this case for over 2 years, 7 months, and 7 days - from June 1, 2017 (original complaint date) to January 8, 2020 (date the jury returned a verdict in Plaintiff's favor).

On June 1, 2017, Plaintiff Michele Rangel commenced the instant lawsuit to pursue unpaid overtime compensation against Defendants Paramount Hearing & Air Conditioning, LLC ("Paramount") and William E. Brown, III ("Brown") (collectively Defendants) as a result of working over 40 hours during one or more workweeks.[2] Plaintiff brought the action pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*., the Ohio Minimum Fair Wage Standards Act, (the "Ohio Wage Act"), O.R.C. §§ 4111 *et seq*., and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts").[3]

Plaintiff's claims of unpaid overtime for the period of October 5, 2014 through May 16, 2017 were premised on two main reasons:

-   First, she regularly worked in Paramount's office during open office hours Monday through Friday, 7:30 am to 4:30 pm ("45-Hour Workweek").[4] Although Plaintiff submitted overtime each pay period until October, 2014, she never received overtime pay for the remainder of her employment through May 16, 2017.[5] Defendants denied Plaintiff's claims and contended that Ms. Rangel took a 1 hour lunch break each day.[6] Plaintiff contended that she did not have a fully uninterrupted meal period from October 5, 2014 through May 16, 2017 because performed job duties, which caused the meal periods to be interrupted (as Defendant Brown testified that he personally observed),

---

[2] (ECF No. 1)
[3] (*Id*.)
[4] (*Id*., PAGEID # 2-5)
[5] (*Id*.; *see also* Plaintiff's Trial Brief, ECF No. 66, PAGEID # 1243-44)
[6] (*Id*.; *id*.; *see also* Defendants' Trial Brief, ECF No. 55, PAGEID # 1194-98)

she worked through the meal periods, and/or she ate at her desk ("1-Hour Meal Deduction").[7] As a result of the inability to enjoy an uninterrupted meal break, Ms. Rangel was owed approximately 1 hour of overtime compensation per day (or approximately 5 hours of overtime per week) for the time she spent working in the office.[8]

- Second, Plaintiff performed off-the-clock work outside of normal office hours of 7:30 am to 4:30 pm.[9] Specifically, Defendants requested that she monitor service calls and after-hours service requests from the website because submissions could be submitted online 24/7, including to schedule appointments.[10] In addition, Plaintiff worked at the Home & Garden Shows each year in February, among other miscellaneous job duties outside of office hours.[11] Moreover, Defendant Brown expressly requested Plaintiff to perform these job duties either before business hours, during nights, and/or on weekends from May 9, 2015 up through her departure on May 16, 2017.[12] Again, Plaintiff claimed that Defendants instructed Plaintiff to only submit 40 hours per workweek instead of the actual number of hours she worked because she was an overhead employee.[13] Plaintiff's claim was supported by the record that she did not receive overtime during any period after October, 2014.[14] Instead, she was paid for a maximum of 40 hours (in weekly pay periods) or 80 hours (in biweekly pay periods) at all times, including during the busy seasons associated with a heating and cooling business.[15]

Defendants denied all of Plaintiff's claims.[16] In support, Defendants asserted that Plaintiff kept track of her own records, was told not to work overtime, denied ever having knowledge that she worked overtime, denied Plaintiff raising the issue of unpaid overtime or the number of hours she worked over 40 in one or more workweeks, claimed that Plaintiff needed permission to work

---

[7] (*Id.*; *id.*)
[8] (ECF No. 1; *see also* Plaintiff's Trial Brief, ECF No. 66, PAGEID # 1243-44)
[9] (Plaintiff's Trial Brief, ECF No. 66, PAGEID # 1243-44)
[10] (*Id.*, ECF No. 66, PAGEID # 1243-44)
[11] (*Id.*, ECF No. 66, PAGEID # 1243-44)
[12] (*Id.*, ECF No. 66, PAGEID # 1243-44)
[13] (*Id.*, ECF No. 66, PAGEID # 1243-44)
[14] (*Id.*, ECF No. 66, PAGEID # 1243-44)
[15] (*Id.*, ECF No. 66, PAGEID # 1243-44)
[16] (Defendants Trial Brief, ECF No. 55. PAGEID # 1195-98)

Page **3** of **31**

overtime, claimed that she could have completed her job duties within the assigned office hours of Monday through Friday, claimed that Brown relied on her not working overtime, and indicated that Brown would have paid her overtime if had she reported it.[17]

### A. Efforts to Settle Plaintiff's Claims Early in the Litigation and Multiple Times Following the Court's denial of Summary Judgment

At the outset of the litigation, Plaintiff sought to resolve her claims of unpaid overtime, inclusive of attorneys' fees and costs (when they were relatively low). Plaintiff first made a demand in July, 2017 (before Defendants filed their Answer on August 11, 2017). Even without the benefit of discovery, the initial demand was within $1,400.00 of the amount that Plaintiff was ultimately awarded by the jury.

Defendants declined to make any monetary offer before filing the Answer and continuing until after the Court denied summary judgment. Even after the initial communications, Plaintiff broached the topic of settlement, but all attempts to resolve the case were rejected by Defendants. For example, Defendants believed it would not be fruitful to participate in any settlement week mediations[18] offered each quarter by the Court. Despite these opportunities to explore a resolution without a costly trial, Defendants were unwilling to participate in them.

Following Defendant Brown's deposition on July 24, 2018, Plaintiff's counsel reached out to Defendants' counsel on August 13, 2018 to explore a resolution and reminded Defendants' counsel that the attorneys' fees were significant given the expenditure of time in the case to that

---

[17] (Defendants' Trial Brief, ECF No. 55. PAGEID # 1195-98)

[18] (*See* ECF Nos. 14, 22, and 28). Although Plaintiff agreed to reschedule the first two mediations because of the outstanding discovery issues based on the deficiencies, they believe that it would be prudent for the parties to explore a resolution after discovery and before briefing summary judgment. ECF No. 28.

point. On August 16, 2018, Defendants stated that Defendants "are not interested in the settlement demand or mediation."

On September 16, 2019, following the Court's denial of the parties' motions for summary judgment (on 9/12/19), Plaintiff's again reached out to Defendants' counsel to see if Defendants were willing to discuss settlement. Defendants did not respond by September 29, 2019, so Plaintiff's counsel reached out again. Defendants' counsel responded that he would be in touch the same week. On October 7, 2019, Defendants' counsel made Defendants' first settlement offer, but it was merely nuisance value barely in excess of costs and expenses incurred. The same day, Plaintiff's offered to send Defendants a demand. Plaintiff served Defendants with a settlement demand on October 11, 2019. One month later, on November 11, 2019, Defendants' counsel indicated that Defendants would not increase their nuisance offer.

On December 19, 2019, the Court held a final pretrial conference. At the close of the conference, the Court suggested that the parties continue to explore whether a resolution could be made prior to trial. Consequently, during the exchange of trial documents, on December 27, 2019, Plaintiff's counsel again reached out to counsel for Defendants to see if Defendants were interested in discussing settlement. On December 28, 2019, Plaintiff received an offer from Defendants' counsel that was not reflective of Ms. Rangel's damages or the attorney's fees, costs, and expenses.

On December 30, 2019, Plaintiff presented a revised/reduced demand with a proposal to submit briefing with respect to Plaintiff's attorneys' fees and costs. The same day, Defendants rejected the proposal and provided a counteroffer. The same day, Plaintiff presented Defendants' counsel with a new, reduced final offer. Later that evening, the proposal was rejected in its entirety.

On December 31, 2019, Plaintiff's counsel reminded counsel for Defendants that the Sixth Circuit in the seminal case in *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) held that there is no proportionality requirement with respect to the amount recovered on behalf of Ms. Rangel in comparison to the amount of attorneys' fees and costs associated with prosecuting the claims. Plaintiff also included a variety of recent decisions within this district and other districts within the Sixth Circuit that follow *Fegley*, including cases that Plaintiff's counsel had approved by this Court. The same day, counsel for Defendants acknowledged that he was aware of the case law. No further settlement discussions were held between the parties.

In sum, Defendants were unwilling to make any monetary offer and/or engage in settlement discussions beginning in July 2017 and continuing through the Court's ruling on summary judgment. Even then, settlement discussions only occurred when initiated by Plaintiff. At all times, Plaintiff understood the dynamics of the fee shifting case, but Defendants refused to engage in any settlement discussions until more than two years after this case was filed.

### B. Discovery Disputes and the Parties Move for Summary Judgment

Defendants filed their Answer on August 11, 2017, which denied all allegations contained in Plaintiff's Complaint.[19]

Thereafter, Plaintiff served Defendants discovery requests on November 3, 2017.[20] In the discovery requests, Plaintiff sought all email communications between Paramount, Mr. Brown, and Michele Rangel. The reason the requests were directed at all email communications was that Ms. Rangel regularly performed work outside Paramount's office hours and some of that work is

---

[19] (Answer, ECF No. 6)
[20] (ECF No. 53, Plaintiff's Second Declaration, PAGEID # 1164)

demonstrated by emails sent or received from her work email addresses – michele@paramountair.net and service@paramountair.net. In addition, Plaintiff sought all documents relating or referring to the number of hours Ms. Rangel worked using the various software programs, including ServiceM8, which is the primary tool used to schedule service appointments. Plaintiff specifically made this request because Ms. Rangel knew the service entries would frequently reflect her work on nights and weekends beyond normal office hours.

After multiple extensions, Defendants served their responses to Plaintiff's first set of discovery on January 26, 2018. In addition to producing the responses, Defendants also produced documents labeled Paramount 1 – Paramount 137.

On May 10, 2018, Plaintiff sent the first 8-page discovery deficiency letter to Defendants outlining the serious deficiencies in the responses and production of documents.[21] On May 29, 2019, Defendants responded to the deficiencies by letter. Importantly, Defendants stated that "**Between documents which have already been produced and the enclosed documents, my client has no further responsive documents. All responsive documents have been provided.**"[22] Relying upon representations by Defendants and their counsel, Plaintiff scheduled Defendant Brown's deposition on July 24, 2018. Plaintiff was desirous of limiting fees and costs by having one deposition that covered all potential documents rather than requiring multiple depositions.

Defendant William E. Brown III's deposition was taken on July 24, 2018. During the deposition, Mr. Brown identified additional[23] documents, among other relevant data, not

---

[21] (ECF No. 53-1, Plaintiff's 1st Deficiency Letter, 5/10/18)
[22] (ECF No. 53-2, Defendants' Response, 5/29/18)
[23] (ECF No. 33-1, Brown Dep., PAGEID # 104, 219, and 233-34.)

previously produced even though Defendants previously represented that "all responsive documents have been provided."

On August 13, 2018, Plaintiff sent a second discovery deficiency letter outlining continued deficiencies based upon Mr. Brown's deposition testimony.[24] On August 23, 2018, Defendants emailed a responsive letter indicating that: (1) paystubs; (2) emails; (3) a manual; (4) miscellaneous documents responsive to request for production number 5; (5) miscellaneous documents responsive to request for production number 8; and (6) miscellaneous documents responsive to request for production number 15, were attached. However, there were no additional attachments to the email other than the letter.[25] Nevertheless, Defendants indicate that they "have no further information."

In accordance with the case management schedule, Plaintiff moved for summary judgment on December 14, 2018 and Defendants moved for summary judgment the same day.[26] Given that the burden to be successful at summary judgment required showing actual or constructive knowledge that Plaintiff worked overtime in one or more workweeks and Defendants were aware of that overtime, but failed to pay her for all such time, Plaintiff's counsel devoted significant time in support of moving for summary judgment and opposing Defendants' dispositive motion, including extensive legal research and analysis, hand-selected examples of sample workweeks when Ms. Rangel worked over 40 hours from hundreds of pages of phone records and

---

[24] (ECF No. 53-3, Plaintiff's 2nd Deficiency Letter, 5/29/18)

[25] (ECF No. 53-4, Defendants' Reply, 8/23/18). The letter identifies additional documents that Defendants would be producing on a disk, but the disk was never received. When Plaintiff later informed Defendants of such, Defendants did not press the issue.

[26] (Plaintiff's Motion for Summary Judgment, ECF No. 36; Defendants' Motion for Summary Judgment, ECF No. 35)

corresponding text messages, as well as applying the compiling precise charts summarizing phone calls and text messages that occurred before or after Ms. Rangel's assigned office hours. On September 12, 2019, the Court denied both motions for summary judgment.[27]

### C. Unanticipated Discovery Issues Following Summary Judgment Stage Prior to Trial

On November 13, 2019, 2 years after discovery requests were served, more than a year after the discovery deadline, after the Court's denial of summary judgment, and shortly after Plaintiff served a substantial demand upon Defendants, they produced a very narrow and incomplete selection of emails and other communication (labeled as Paramount 208 - Paramount 322). However, it is clear that, the belatedly-produced documents were not comprehensive of all relevant emails sent or received.[28]

Notably, Defendant Brown informed Plaintiff for the first time that the original production of emails was the result of a keyword search based on keywords that Defendant Brown "thought may be relevant to the case."[29] **At no time did Plaintiff agree to limiting the email production to a keyword search, particularly one based on keywords that Defendant Brown deemed relevant**. In addition, despite the fact that Defendants were on notice of the discovery requests since November 2017, Mr. Brown never produced the ServiceM8 records that Plaintiff requested even though he was well aware that ServiceM8 was the software used to schedule service appointments and this information was very relevant to Ms. Rangel's claims. Instead, in

---

[27] (ECF No. 49)
[28] (Rangel Declaration, ECF No. 53)
[29] (ECF No. 54)

November, 2019, he produced what was not a complete selection of service appointments from ServiceM8.[30]

As such, Plaintiff's counsel had to devote additional time to ensure that these belatedly produced and handpicked documents/data were precluded from trial, which required further preparation, careful review of the belatedly-produced documents and all previous discovery correspondence, research of federal jurisprudence within the Sixth Circuit, consultation with Ms. Rangel, submitting supporting evidence, and ultimately advocating in support of Ms. Rangel at a telephonic hearing before Magistrate Judge Chelsey M. Vascura on December 5, 2019. On December 9, 2019, the Court rendered an opinion[31] regarding the belatedly-produced documents and communication and denied Defendants' use of them at trial.

### D. Trial Preparation

Trials are expensive. They are extremely labor-intensive. Plaintiff trusted her counsel to represent her best interests and obtain a verdict in her favor or she could receive nothing (and potentially be responsible for Defendants' costs). This case is no different or less important than any other trial and certain aspects of the case made it more difficult, including the handpicked discovery and the fact that Defendants elected not to track Ms. Rangel's time making defining such time more difficult. As would be expected, Plaintiff's counsel devoted substantial time preparing for trial. Indeed, trial preparation required that Plaintiff's counsel devote the majority of their time to this case to ensure the proper trial strategy and preparation.

---

[30] (*Id.*)
[31] (ECF No. 52)

Defendants did not lighten Plaintiff's counsel's workload because Defendants did not create first drafts of any documents for trial.[32] Instead, Plaintiff's counsel completed first drafts of all trial documents. In particular, Plaintiff's counsel drafted, prepared, met and conferred, exchanged multiple drafts with opposing counsel, and ultimately submitted to the Court:  jury instructions/verdict forms, disputes to jury instructions/verdict forms (with analysis), exhibit lists, stipulation of facts, witness lists, proposed voir dire, a final pretrial order, and a trial brief.

In addition, trial preparation included, but is not limited to, review and analysis of all pleadings, documents exchanged during discovery, deposition testimony, multiple consultations with and meetings with Ms. Rangel, research and analysis of federal jurisprudence within the Sixth Circuit, consultation with counsel to confer about the proper trial strategy, and extensive review of trial exhibits along with Ms. Rangel. Plaintiff's counsel also closely examined the records in order to make a complex individualized damage calculation to ensure that the Plaintiff's unpaid overtime damages were comprehensive, including the unpaid meal periods and after-hours work during the busy and less busy time periods.

### E.  Trial Proceedings

The trial lasted just over 2 days, including voir dire, opening statements, direct examination of Ms. Rangel, cross-examination, and re-direct examination with respect to Plaintiff's case-in-chief. Defendants moved for a directed verdict, which the Court denied. Subsequently, Defendants presented their defense, including direct examination and cross-examination. Following the close of evidence, the Court held the charging conference to review, analyze, and advance jury

---

[32] Throughout the case, Defendants deferred much of the work to Plaintiff's counsel. Nearly all of the joint filings were drafted by Plaintiff's counsel. All of the trial documents except those submitted solely by Defendants were initially drafted by Plaintiff's counsel.

instructions consistent with Sixth Circuit jurisprudence. During the charging conference, Plaintiff's counsel identified an issue with the good faith defense to liquidated damages. On the third day, the parties made closing arguments. After instructions were given to the jurors, Plaintiff's counsel remained at the courthouse to remain readily available for any issue that arose. Shortly after the jury began deliberations, the parties were summoned for a juror question. Within a short time thereafter, the jury returned a verdict in Plaintiff's favor.

At the close of trial, the jury returned a verdict of $21,973.[33] This means that the jury found a willful violation by Defendants. In addition to finding a willful violation, the jury awarded Ms. Rangel additional compensation in the form of liquidated damages in the amount of $21,973. In total, Ms. Rangel was awarded $43,946. This is an excellent result for Plaintiff in a case where defining damages was certainly a hurdle.

## III. <u>LAW AND ARGUMENT</u>

To summarize, Plaintiff seeks attorney fees in the amount of $181,207.38 in attorneys' fees and litigation costs/expenses incurred by Plaintiff's counsel.[34] For the Court's convenience, declarations of Plaintiff's counsel in support of the instant motion are attached hereto. (*See* First Declaration of Matthew J.P. Coffman attached as **Exhibit A**, First Declaration of Daniel I. Bryant attached as **Exhibit B**). Following the analysis with respect to the reasonableness of Plaintiff's attorneys' fees and costs, Plaintiff will analyze the application of the Ohio Prompt Pay Act applies, as well as post-judgment interest should be included with the judgment.

---

[33] (ECF No. 83, Completed Jury Verdict Form)
[34] Of the costs / expenses incurred, Plaintiff reimbursed counsel in the amount of $2,058.07. This amount should be reimbursed to her, but counsel should be reimbursed for the remainder of the costs / expenses incurred.

**A. Applicable Standard for Evaluating Attorney Fees and Costs under the FLSA – Reasonableness using the Lodestar Analysis.**

In light of the judgment rendered in Plaintiff's favor, Plaintiff is entitled, as a matter of

law, to an award of reasonable attorney's fees and costs as a result of Defendants' violations of the

FLSA[35] because it has a fee-shifting provision:

> The court in such action ***shall***, in addition to any judgment awarded
> to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be
> paid by the defendant, and costs of the action.

29 U.S.C. § 216(b) (emphasis added).

"[T]he FLSA *requires* the Court to award attorney's fees against any employer who

violates the FLSA, and the relevant statute, 29 U.S.C. § 216(b)." *Fulkerson v. Yaskawa America,

Inc.*, No. 3:13-cv-130, 2015 WL 6408120, at *4 (S.D. Ohio Oct. 23, 2015). The federal courts have

long recognized the profound importance of plaintiffs' right to recover attorneys' fees under the

FLSA. In *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers

Association, Local 307, et al. v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th

Cir. 1984), the Court recognized that an award of attorneys' fees is mandatory under 29 U.S.C.

§216(b). The Court explained, that "the purpose of §216(b) is to insure effective access to the

judicial process by providing attorneys for prevailing plaintiffs with wage and hour grievances;

[o]bviously Congress intended that the wronged employee should receive his full wages…without

incurring any expense for legal fees or costs." *Id*.

Providing attorney's fees therefore is essential to ensure that low-wage workers will have

access to counsel to enforce these important rights. Indeed, "[a]n award of attorneys' fees under

---

[35] Likewise, Ohio Revised Code § 4111.10(A) provides that in a case involving unpaid overtime, the employer is liable "for costs and reasonable attorney's fees as may be allowed by the court."

the FLSA is *mandatory*, with the amount of fees within the discretion of the court." *Cruz v. Vel-A-Da, Inc*. Case No. 3:90CV7087, 1993 WL 659253, \*3 (N.D. Ohio May 14, 1993) (*citing United Slate, Tile & Composition v. G & M Roofing,* 732 F.2d 495, 501 (6th Cir.1984)).

The standard for reviewing a request for attorney's fees is reasonableness. *See Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991). Congress has determined that it is important for FLSA rights to be enforced, and that reasonable attorney fees must be awarded to provide for such enforcement, particularly where the victims of FLSA violations are often low-wage workers whose per-person damages may not be significant. *Fegley v. Higgins*, 19 F.3d 1126, 1134-43 (6th Cir. 1994). Thus, it is not uncommon for fee awards to exceed the amount recovered by plaintiffs in lost wages. *See City of Riverside v. Rivera,* 477 U.S. 561, 574, 578 (1986) (no rule of proportionality in cases awarding fees under § 1988, in order to ensure lawyers are available to represent persons with legitimate claims).

*Fegley v. Higgins* is the seminal Sixth Circuit case that stands for the fact that there is no requirement of proportionality between the attorney's fees and costs sought and the amount recovered for violations of the FLSA. 19 F.3d 1126, 1130 (6th Cir. 1994) (awarding attorneys' fees that were more than five times the amount awarded to the plaintiff). Since *Fegley*, many courts within the Sixth Circuit (including this Court) have regularly granted attorney's fees and costs in excess of the amount recovered to plaintiffs in FLSA cases. *See, Funk v. Airstream, Inc.*, 2019 WL 4599816 (S.D. Ohio 2019) (Rice, J) (awarding **$171,663.01** in attorney's fees and costs where **$21,338.00** was awarded to FLSA collective); *Macklin v. Delta Metals Company, Inc.*, 2011 WL 13070420 (WD Tenn. 2011) (awarding **$48,802.02** in attorney's fees and costs after previously only awarding **$300.15** in damages); *West v. Emeritus Corp.*, 2017 WL 2880394 (MD Tenn. 2017)

(awarding approximately **$9,000** in damages and **$46,000** in fees and costs); *Abdelkhaleq v. Precision Door of Akron*, 2010 WL 395236 (ND Ohio 2010) (awarding **$30,470.10** in attorney's fees and **$3,948.96** in damages); *Ford v. Carnegie Management Services, Inc.,* 2017 WL 4390294 (SD Ohio 2017) (awarding **$89,606.74** in attorneys' fees and costs, and **$24,893.26** to class); *Jasper v. Home Health Connection, Inc.*, 2016 WL 8202768 (SD Ohio 2016) (awarding **$63,000** in attorneys' fees and costs, and **$35,000** in damages to plaintiffs); *Brantingham v. Emergency Services, Inc.*, 2017 WL 5175866 (SD Ohio 2017) (awarding **$35,586.97** in attorneys' fees and costs, and **$13,168.63** in damages to plaintiffs); *Moran v. Al Basit, LLC*, 2016 WL 8201648 (ED Mich 2016) (awarding **$53,402.04** in attorney's fees and costs, and **$13,350** in damages to plaintiff). Awarding attorney's fees and costs in excess of the amount recovered is not something that is unique to the Sixth Circuit, as many courts throughout the United States have also awarded and confirmed attorney fee awards in excess of the amount recovered.[36] The reason that the same principle has been consistently applied in the Sixth Circuit and throughout the United States is

---

[36] *See e.g., Fox v. Tyson Foods, Inc., No. 4:99-CV-1612-VEH, Doc. 819 (N.D. Ala. Feb. 17, 2009) (in an FLSA case in which three individual donning and doffing claims were tried, the plaintiffs collectively recovered $4,937.20 in wages but were awarded $765,618.10 in attorneys' fees based on the attorney's lodestar hourly rates); Hodgson v. Miller Brewing Co., 457 F.2d 221, 228-29 (7th Cir. 1972); Perdomo v. Sears, Rosebuck & Co., Case No. 97-2822-CIV-T-17A, 1999 WL 1427752, *10 (M.D. Fla. Dec. 3, 1999); Wales v. Jack M. Berry, Inc., 192 F.Supp.2d 1313, 1327 (M.D. Fla. 2001); Heder v. City of Two Rivers, 255 F.Supp.2d 947, 955 (E.D. Wis. 2003); Perrin v. John B. Webb & Assocs., Case No. 604CV399ORLKRS, 2005 WL 2465022, *4 (M.D. Fla. Oct. 6, 2005) ("in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time"); Cox v. Brookshire Grocery Co., 919 F.2d 354, 358 (5th Cir. 1990) (upholding award of $9,250 in attorney's fees even though Plaintiff recovered only $1,698.00); Bonnette v. Cal. Health & Welfare, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); Albers v. Tri-State Implement, Inc., 2010 U.S. Dist. LEXIS 23450, *66-86 (D.S.D. Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' combined damages totaled only $2,137.97); King v. My Online Neighborhood, Inc., 2007 U.S. Dist. LEXIS 16135 (M.D. Fla. Feb. 20, 2007) (approving a settlement for $4,500 in unpaid wages and $10,500 in attorney's fees); Heder v. City of Two Rivers, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); Griffin v. Leaseway Deliveries, Inc., 1992 U.S. Dist. LEXIS 20203 (E.D. Pa. Dec. 31, 1992) (awarding attorney's fees of $33,631.00 for a plaintiff's award of $17,467.20); Holyfield v. F.P. Quinn & Co., 1991 U.S. Dist. LEXIS 5293, *1 (N.D. Ill. Apr. 22, 1991) (awarding $6,922.25 in attorney's fees for a judgment in the amount of $921.50).*

because without the recovery of attorney's fees and costs, many individuals like Plaintiff who have suffered from their employers not compensating them in accordance with the minimum requirements under the FLSA would not be able to enforce their legal rights.

In determining reasonableness of fees, it is reached through an evaluation of multiple factors, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees. *Burcham v. Taubra Corp.*, No. 3:17-cv-168, 2018 WL 3840827, at *2 (S.D. Ohio Aug. 13, 2018) (Rose, J.) (citing *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984)). The purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. *Id.* (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate*, 732 F.2d at 502)). "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in a FLSA case] encourage[s] the vindication of congressionally identified policies and rights." *Id.* (quoting *Fegley*, 19 F.3d at 1135 (quoting *United Slate*, 732 F.2d at 503)).

As a general matter, reasonable attorney's fees are determined by way of the "lodestar calculation – the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Moore v. Freeman*, 355 F.3d 558, 565-66 (6th Cir. 2004) (citations omitted). A "strong presumption favors the lawyer's entitlement to his lodestar fee." *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). "Accordingly, modifications to the lodestar are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings." *Id.* At the heart of the lodestar calculation is the reasonable

hourly rate. In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community, which for fee purposes is the legal community within the court's territorial jurisdiction or venue. *Id.*, 227 F.3d at 349. As recently observed by this Court, the "degree of success obtained is the most critical factor in determining the reasonableness of a fee award." *Funk v. Airstream, Inc.*, No. 3:17-CV-260, 2019 WL 4599816, at *2 (S.D. Ohio Sept. 23, 2019) (Rice, J.) (citing *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933).

The starting point for determining the amount of a reasonable fee is multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Burcham*, 2018 WL 3840827 at *2 (citing *Hensley*, 461 U.S. at 433-34). In a claim for attorney's fees, the court will determine the number of hours reasonably expended on the litigation and multiply that figure by a reasonable hourly rate. *Hensley*, 461 U.S. at 434. *See also Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999) ("a court must first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate") (internal citations omitted). The resulting yield is what is known as the "lodestar." The Sixth Circuit has held that a "reasonable" fee is "one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd*, 227 F.3d at 349 (6th Cir. 2000) (citing *Reed*, 179 F. 3d at 471 (citing *Blum v. Stenson,* 465 U.S. 886, 893, 897 (1984))). *See also Dowling v. Litton Loan Servicing, LP*, No. Case No. 05-cv-098, 2008 WL 906042, at *2 (S.D. Ohio Mar. 31, 2008), quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995); *Geier v. Sunquist*, 372 F.3d 784, 791 (6th Cir. 2004) ("The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers")(internal citations omitted).

**B. Plaintiff's Counsel's Hourly Rates are Reasonable and have been Consistently Approved by this Court.**

In arriving at the reasonable hourly rate, the court typically looks to the prevailing rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Adcock-Ladd*, 227 F.3d at 350; *See also Project Vote v. Blackwell*, Case No. 1:06-cv-1628, 2009 WL 917737 *10-11 (N.D. Ohio Mar. 31, 2009). "Courts will frequently award fees based on an attorney's customary rate, because 'normal billing rates usually provide an efficient and fair short cut for determining the market rate.'" *Id*. at *11 (quoting *Dowling*, 2008 WL 906042 at *2) (internal citations omitted).

Current market rates, rather than historic market rates, of compensation are appropriate to compensate for the delay in payment of fees. *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 107 S. Ct. 3078, 3082 (1987). *See also Gonter v. Hunt Valve Company, Inc*., 510 F.3d 610, 617 (6th Cir. 2007) (citing *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) and *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co*., 684 F.Supp. 953, 958 (6th Cir. 1988) (applying the current rate rather than the historical rate due to the fact that compensation is often not received for several years).

Here, Plaintiff's counsel seek to have the same hourly rates which has been approved by this Court over the years:  $350 for Attorney Matthew J.P. Coffman and $275 for Attorney Daniel I. Bryant. These rates are consistent with current market rates for individuals with their skills, experience, and reputation. (*See* **Ex. A** Coffman Dec. at ¶ 53-63; **Ex. B**, Bryant Dec. at ¶ 56-57; **Ex. C**, Draher Dec. at ¶ 7-11; and **Ex. D**, Knoll Dec. at ¶ 21-24.) These hourly rates are reasonable because, in addition to the hourly rates being previously approved by this Court as being "reasonable and are in line with the prevailing local market rates for attorneys with comparable

Page **18** of **31**

skill and experience," *Funk*, 2019 WL 4599816 at *3 (expressly concluding the reasonableness of the undersigned hourly rates). Moreover, courts within the Sixth Circuit have held that hourly rates much higher than these two amounts were reasonable. *See, e.g., Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376 at *6 (S.D. Ohio 2019) (approving hourly rates of $550 and $600 per hour); *Stewart v. CUS Nashville, LLC,* Case No. 3:11-cv-342, 2014 WL 116593, at *8 (M.D. Tenn. Jan. 10, 2014) (finding that $395 hourly rate for FLSA case was "presumptively reasonable"); *Hunter v. City of Cooper Hill, Tenn.*., Case No. 1:09-cv-238, 2013 WL 5278673, at *6 (E.D. Tenn. Sept. 19, 2013) (finding that the $395 hourly rate for FLSA cases was reasonable).

As discussed below, Plaintiff submits that Plaintiff's counsel's recovery of **$175,987.50** in attorneys' fees and an additional **$5,219.88**[37] in costs/expenses is fair and reasonable and warrants this Court's approval.

### C. Analysis of Factors Used to Evaluate an Award of Attorneys' Fees Supports Court Approval of the Requested Fee Recovery.

In *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), the Sixth Circuit established six relevant factors in the analysis of determining reasonable attorneys' fees. These factors include:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

---

[37] Of the total costs/expenses, $2,058.07 will be reimbursed to Plaintiff.

*Id.* Other factors that may be considered can include (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3, 103 S.Ct. 1933. Out of all of the factors, the degree of success obtained is the most critical factor in determining the reasonableness of a fee award. *Funk*, 2019 WL 4599816 at \*2 (citing *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933) (emphasis added).

As discussed below, all of the factors (whether analyzed under *Ramey* or *Hensley*) weigh in favor of Plaintiff's counsel's fees and costs recovery of **$181,207.38**.

### (1) The Value of the Benefit Rendered to the Plaintiff from a Jury Verdict Supports the Award of the Requested Attorney Fees.

It goes without saying that the value of the benefit rendered to Ms. Rangel weighs in her favor because she was the prevailing party in a jury trial. The Supreme Court defined prevailing parties as parties that achieve "success on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433. The Supreme Court further explained that, "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 792-93 (1989); *See also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and*

*Human Resources*, 532 U.S. 598, 605 (2001) (the essential test established by the Court requires the plaintiff to achieve a "judicially sanctioned change in the legal relationship of the parties").

As noted above, at the close of trial, the jury returned a verdict of unpaid overtime in the amount of $21,973.[38] The jury determined that Defendants' violation was willful. In addition, the jury awarded Ms. Rangel additional compensation in the form of liquidated damages in the amount of $21,973. In total, Ms. Rangel was awarded $43,946. This is an excellent result and, given that the degree of success obtained is the most critical factor in determining the reasonableness of a fee award, favors Plaintiff's request for fees and costs. Indeed, but-for the efforts of Plaintiff's counsel, Plaintiff could not have achieved a more successful outcome in this litigation with respect to her claims as alleged in the Complaint. Certainly, Plaintiff benefited from counsel's legal skill in obtaining such a successful result, including liquidated damages equal to 100% of her unpaid overtime compensation. As a result, this factor favors approval of Plaintiff's request.

**(2) The Hours Expended are Reasonable.**

As noted above, Defendants were presented with repeated opportunities to resolve this case beginning at the outset of the litigation and continuing throughout the pendency of the case.[39] Plaintiff will not repeat all of the efforts, but in sum, Defendants were unwilling to make any monetary offer and/or engage in settlement discussions beginning in July 2017 and continuing through the Court's ruling on summary judgment. Even then, settlement discussions only occurred when initiated by Plaintiff. At all times, Plaintiff understood the dynamics of the fee shifting case,

---

[38] (ECF No. 83, Completed Jury Verdict Form)
[39] *See* Section II(A) above.

but Defendants refused to engage in any settlement discussions until more than two years after this case was filed.

Plaintiff's counsel's hours expended were reasonable. The billed hours were necessary for Plaintiff to achieve the result that she did. *See* **Exhibit A** Coffman Declaration at ¶ 53-63; **Exhibit B** Bryant Declaration at ¶ 52-66; **Exhibit C** Draher Declaration at ¶ 7-11; and **Exhibit D** Knoll Declaration at ¶ 21-24.Plaintiff's counsel was responsible for nearly all of the first drafts of joint documents, including all trial documents submitted to the Court. In addition, Defendants' failure to provide full and complete discovery responses and production resulted in significant additional time following up on the deficiencies. Moreover, Defendants were unwilling to discuss any monetary offer until after the Court ruled upon summary judgment at which point, they made a nuisance value offer (only after Plaintiff asked if Defendants had an interest in trying to resolve the case). The only other settlement discussions that occurred prior to trial were initiated again by Plaintiff's counsel, but unfortunately, the discussions were not representative of the claims and fees/costs entitlement.

As such, Plaintiff should not be penalized for being forced to fully litigate Plaintiff's claims and complete a jury trial in order to obtain the overtime compensation that Plaintiff earned long ago. Otherwise, she would have no other option to vindicate her rights under the FLSA. Moreover, penalizing Plaintiff's counsel for properly prosecuting Ms. Rangel's claims could otherwise deter counsel and other FLSA attorneys from pursuing individual FLSA cases and is inconsistent with the FLSA's "broad remedial purpose." *Myers v. Marietta Memorial Hospital*, 2016 WL 11501744 at *3 (S.D. Ohio 2016) (Marbley, J).

> **(3) Society's Stake in Rewarding Attorneys Who Produce Such Benefits Also Supports the Award of the Requested Attorney Fees.**

The factor, "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive for others" also supports Plaintiff's counsel's fee request. As this Court observed, wage and hour cases "have a value to society more broadly, both as deterrents to unlawful behavior-particularly when the individual injuries are too small to justify the time and expense of litigation – and as private law enforcement regimes that free public sector resources." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253 at *7 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (quoting *Gascho*, 822 F.3d at 287).

Wage and hour cases, like this one, often involve workers with relatively small individual claims. Though the claims are individually small, the unpaid overtime wages make a significant difference in the lives of workers. Society has a strong interest in awarding attorneys who take on these cases and recover real benefits for exactly the type of workers the FLSA is designed to protect. Were it not for the work of attorneys such as Plaintiff's counsel, the work of a number of employees, including Ms. Rangel, would go uncompensated or undervalued. Moreover, the FLSA would not be enforced if attorneys like Plaintiff's counsel were unwilling to prosecute the case to verdict. Application of the above principles to this case demonstrates that *Ramey*'s factor as to "society's stake in awarding attorney's fees" favors Court approval of Plaintiff's Counsel's requested fee recovery.

### (4) The Fact that the Services Were Undertaken on a Contingent Fee Basis Also Supports the Award of the Requested Attorney Fees.

Despite having made significant investments of time, out-of-pocket expenses throughout this litigation, and precluded other employment opportunities due to trial preparation, Plaintiff's counsel have received no compensation for this case. (*See* **Exhibit A** Coffman Declaration at ¶ 54;

**Exhibit B** Bryant Declaration at ¶ 53.) At all times, they have faced a significant risk of nonpayment because they undertook this litigation on a contingent basis. (*Id.*) *See Wright*, 2018 WL 3966253 at *6; *In re Cardinal Health*, 528 F.Supp.2d at 766 ("Several courts consider the risk of non-recovery the most important factor in fee determination"); *In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 1029, 1043 (S.D. Ohio 2001) ("contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery").

This factor weighs in favor of approving Plaintiff's counsel's requested fee recovery. Here, Plaintiff's counsel have devoted 562.2 hours to this action and have risked non-payment of **$181,207.38**,[40] knowing that, if their efforts are unsuccessful, they will recover nothing. Further, the risks of non-payment were very real in light of factual uncertainties regarding the computation of Plaintiff's wages owed and the uncertainty that comes with a jury trial. Given the risks of establishing liability and damages and the possibility of non-payment that has been present throughout this litigation, an award of the requested fee based directly upon Plaintiff's counsel's time spent prosecuting Plaintiff's claims is the fair result.

### (5) The Value of the Services of an Hourly Basis also Supports the Award of the Requested Attorney Fees.

This factor, whether it is analyzed under the lens of *Ramey or Hensley*, also strongly favors Plaintiff's counsel's requested fee recovery. As outlined above, the efforts of Plaintiff's counsel resulted in a successful jury verdict. In light of the significant recovery for Plaintiff, the amount of Plaintiff's counsel's fees and expenses is fair and reasonable and should be approved *See Adcock-*

---

[40] Plaintiff's counsel has not received any payment for any time spent working on the case. Plaintiff's counsel has unreimbursed expenses of **$3,161.81** was reimbursed for **$2,058.07** of their total expenses by Plaintiff, so she technically bears the risk of non-payment in that amount, but Plaintiff has included it in the total.

*Ladd, supra*, 227 F.3d at 350 (6th Cir. 2000) (A "strong presumption favors the lawyer's entitlement to his lodestar fee.").

As of the filing of this Motion, the firms representing Plaintiff have expended **$188,302.38**[41] in attorney's fees and costs/expenses, but they are only requesting **$181,207.38** for fees and costs/expenses. (*See* **Ex. A**, Coffman Dec. at ¶ 53-63; **Ex. B**, Bryant Dec. at ¶ 60-65.) The amount of fees requested is less than counsel's lodestar total. (*Id*.) Because Plaintiff's counsel is seeking to recover their lodestar, this factor weighs heavily in favor of Plaintiff's counsel's fee request.

### (6) The Complexity of the Litigation Also Supports the Award of the Requested Attorney Fees.

Generally speaking, most wage and hour cases are inherently complex. *Wright*, 2018 WL 3966253 at *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (albeit in the class action context) (internal citations omitted); *In re Telectronics*, 137 F.Supp.2d 985 at 1013. "FLSA actions are complex." *Snead v. Interim Healthcare of Rochester, Inc.*, 286 F.Supp.3d 546, 558 (W.D.N.Y. 2018).

This matter resulted in a jury verdict only after vigorous and extensive investigation, discovery, and litigation. Though the subject matter of the lawsuit was not unfamiliar to Plaintiff's counsel, Plaintiff's counsel faced a variety of hurdles at various stages through this matter, particularly given Defendants did not produce complete responses and production to discovery, Defendants did not track Plaintiff's time worked so damages were not easily defined, and Plaintiff's counsel had to match hundreds of pages of phone records and text messages to support Plaintiff's claims, among other things. (*See* **Ex. A**, Coffman Dec. at ¶¶ 40; **Ex. B**, Bryant Dec. at

---

[41] Bryant indicates that he has reduced his billable hours by 25.8 hours. Ex. B, Bryant Dec. at ¶ 60.

¶ 39.) Plaintiff's Counsel have demonstrated a substantial commitment of time to this action during the past 31 months. "Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986)). That presumption applies to Plaintiff's request because her attorneys have culled their hours, their rates have previously been approved by this Court, have either reduced and/or not billed for duplicative time, and have further established their rates and fees are appropriate in light of their expertise and skill. (*See* **Ex. A**, Coffman Dec. at ¶ 53-63; **Ex. B**, Bryant Dec at ¶ 58-60; **Ex. C**, Draher Dec. at ¶ 7-11; **Ex. D** Knoll Dec. at ¶ 20-24.)

 (7) **The Professional Skill and Standing of Counsel.**

 The final *Ramey* factor, "the skill and efficiency of the attorneys," also favors Plaintiff's counsel's requested fee recovery. *Wright*, 2018 WL 3966253 at *7.

 Fee applicants are to exercise "billing judgment," i.e., to exclude from their fees excessive, redundant or otherwise unnecessary hours, which would be unreasonable to bill a client. *See West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 657 F.Supp.2d 914, 921 (S.D. Ohio 2009) (quoting *Hensley*, 461 U.S. at 437). Here, counsel has taken the affirmative steps to avoid excessive, redundant or duplicative hours during the litigation of this matter. (*See* **Ex. A**, ¶ 53-63; **Ex. B**, ¶ 58-60; **Ex. C**, ¶ 7-11; **Ex. D**, ¶ 20-24)

 The services rendered to Plaintiff reflects the extensive experience Plaintiff's counsel have in wage and hour matters under the FLSA and employment law, experience that is outlined in the declarations submitted by Plaintiff's counsel to the Court. (*See* Declaration of Matthew J.P.

Coffman; Declaration of Daniel I. Bryant). Rather than repeating Counsel's qualifications here, Plaintiff's Counsel refers the Court to the attached Declarations. (*Id.*)

In summary, based on Plaintiff's' Counsel's extensive experience and their efforts throughout this litigation to achieve an excellent result on behalf the Plaintiff, the "skill and efficiency of the attorneys" factor weighs in favor of Court approval of the requested fee recovery. (*See* **Ex. A**, Coffman Dec. at ¶ 53-63; **Ex. B**, Bryant Dec. at ¶ 3-7 and 56-57; **Ex. C** Draher Declaration at ¶ 7-11; **Ex. D**, Knoll Dec. at ¶ 20-24.)

> **D. Plaintiff's Counsel's Costs and Expenses are Reasonable because they were necessary and integral to the successful prosecution of Plaintiff's claims.**

When costs and expenses are incurred that are necessary to litigate and prosecute the lawsuit, they are reasonable. *Wright*, 2018 WL 3966253 at *7. This includes costs for the 30(b)(6) deposition, transcripts of the depositions, parking, trial materials, and miscellaneous investigatory costs to determine the class-wide FLSA-violating pay practices. *Id.*

The costs/expenses incurred herein are reasonable. (*See* **Ex. A**, Coffman Dec. at ¶ 60-63; **Ex. B**, Bryant Dec. at ¶ 56-58; **Ex. C** Draher Declaration at ¶ 7-11; **Ex. D**, Knoll Dec., ¶ 21-24)

> **E. The Ohio Prompt Pay Act Applies to the Judgment because the Unpaid Overtime Compensation was no longer in "dispute" after the Jury returned a Favorable Verdict on January 8, 2020.**

Under the Sixth Circuit, Defendants' FLSA violations automatically give rise to violations under Ohio's Prompt Pay Act ("OPPA"), codified at Ohio Revised Code § 4113.15. *Craig v. Bridge Bros. Trucking, LLC*, 823 F.3d 382 n.1 (6th Cir. 2016) (Ohio Prompt Pay Act claim "rises and falls") with the FLSA claim). Further, as joint employers, Defendant Paramount and Defendant Brown, individually, are covered employers under the OPPA because the Act binds

"[e]very employer doing business in this state[,]"[42] with "employer" defined as "an individual, firm, partnership, association, or corporation."[43] S*ee also Parks v. Cent. USA Wireless, LLC*, No. 1:17-CV-448, 2019 WL 4743648, at *5 (S.D. Ohio Sept. 29, 2019) (Barrett, J.) (holding individual and corporation were jointly liable for OPPA liquidated damages).

While Defendants' may claim that the OPPA does not apply because it "disputed" the wages were owed to Ms. Rangel under *O'Brien*,[44] the Court should summarily reject such an argument. The Court does not have to decide whether the presence or absence of a "dispute" is necessary because the jury's verdict eliminated any purported "dispute." O.R.C. § 4113.15. The very nature of a judgment or verdict, it establishes the facts and proscribes the parties' obligations as a result. Therefore, Plaintiff respectfully requests that the Court award her additional compensation in the form of liquidated damages of 6% of the unpaid overtime compensation resolved by the jury, or $21,973, for a total amount of liquidated damages of $1,318.38 under the OPPA.

### F.  Post-Judgment Interest[45] is Appropriate beginning January 9, 2020 – the date of the Judgment.

Pursuant to 28 U.S.C. § 1961, interest "shall be allowed on any money judgment in a civil case recovered in a district court" and "[i]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week

---

[42] Ohio Rev. Code § 4113.15(A).
[43] Ohio Rev. Code § 4113.15(D)(4).
[44] *O'Brien v. Ed Donelly Enterprises*, 575 F.3d 567 (6th Cir.2009)
[45] Plaintiff is not seeking pre-judgment interest because she was awarded liquidated damages. In the Sixth Circuit and the United States Supreme Court, a plaintiff cannot recover both liquidated damages and prejudgment interest under the FLSA. *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 841 (6th Cir. 2002); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715-16, 65 S. Ct. 895, 89 L. Ed. 1296 (1945).

preceding the date of the judgment." *See* 28 U.S.C. § 1961(a). Further, interest shall be computed daily to the day of payment and shall be compounded annually. *Id*. at § 1961(b). The Sixth Circuit has held that post-judgment interest is mandatory under § 1961, which means that a plaintiff is entitled to post-judgment interest regardless of whether the district court explicitly awards it. *Coffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002) (holding that district court has no discretion to deny post-judgment interest). In *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 836, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), the Supreme Court held that postjudgment interest should accrue once damages have been meaningfully ascertained. In *Adkins v. Asbestos Corp., Ltd.,* 18 F.3d 1349, 1352 (6th Cir.1994), the Sixth Circuit applied *Bonjorno,* and held that in a case where "the original judgment was vacated *in its entirety* on the first appeal and the district court was ordered to support its award of damages with specific findings of fact and conclusions of law ... the damages suffered by the plaintiffs were not meaningfully ascertained as required by *Bonjorno* until the trial court issued its second judgment." *Id.* Since *Bonjorno* and *Adkins*, the Sixth Circuit applies the "meaningful ascertainment" standard for purposes of determining when post-judgment interest should begin. *Whitesell Corp. v. Whirlpool Corp.*, 496 F. App'x 551, 557 (6th Cir. 2012).

Finally, "[p]ost judgment interest should be awarded on the entire amount of the judgment, to include the prejudgment interest element of the damages award, as well as any later awarded attorney fees or costs." *Florists' Mut. Ins. Co. v. Ludy Greenhouse Mfg. Corp.*, 521 F.Supp.2d 661, 692 (S.D. Ohio 2007) (citing *Coffey, supra*, 302 F.3d at 586, 589). *See Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 495 (6th Cir. 2001) ("§ 1961(a) permits the interest to run on a fee award from the time of entry of the judgment which unconditionally

Page **29** of **31**

entitles the prevailing party to reasonable attorney fees"). *See also Lankford v. Reladyne, LLC*, No. 1:14-CV-682, 2016 WL 3640691, at *8 (S.D. Ohio June 29, 2016) (awarding post-judgment interest from the date of the judgment for the entire amount, including attorney fees, to the date he became entitled to attorney fees even though such fees were not yet reduced to a sum certain.) (citing *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 495 (6th Cir. 2001)).

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's attorneys' fees, all costs, and all expenses incurred in this matter in the amount of <u>**$181,207.38**</u>. In addition, Plaintiff requests $1,318.38 in OPPA damages and post judgment interest accruing as of January 9, 2020.

Respectfully submitted,

*/s/ Matthew J.P. Coffman*              */s/ Daniel I. Bryant*
Matthew J.P. Coffman (0085586)         Daniel I. Bryant (0090859)
**COFFMAN LEGAL, LLC**                 **BRYANT LEGAL, LLC**
1550 Old Henderson Road                1550 Old Henderson Road
Suite 126                              Suite 126
Columbus, Ohio 43220                   Columbus, Ohio 43220
Phone: 614-949-1181                    Phone: 614-704-0546
Fax: 614-386-9964                      Fax: 614-573-9826
Email: mcoffman@mcoffmanlegal.com      Email: dbryant@bryantlegalllc.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day January, 2020, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's ECF system.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman