# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Michelle Rangel, | : | |
| Plaintiff, | : | Case No. 2:17-cv-473 |
| - vs - | | Judge Sarah D. Morrison |
| | : | Magistrate Judge Chelsey Vascura |
| Paramount Heating & Air Conditioning, LLC., *et al*., | : | |
| | : | |
| Defendants. | | |

## **OPINION & ORDER**

In this Fair Labor Standards Act ("FLSA") case, the jury found that Plaintiff Michelle Rangel performed overtime work for Defendants Paramount Heating and Air Conditioning, LLC and William Brown for which she was not paid. The jury further found that Defendants' failure to pay Ms. Rangel was willful. As such, the jury determined that liquidated damages were appropriate. The jury awarded Ms. Rangel $43,946 in total. (ECF No. 86.)

Ms. Rangel now presents the Court with two post-trial motions. In the first, she seeks her attorney's fees and costs, plus post-judgment interest and an additional amount in liquidated damages under Ohio's Prompt Pay Act ("OPPA"), R.C. § 4113.15. (ECF No. 88.) Her second motion requests an order of attachment as to all of Defendants' non-wage assets in the amount of $225,153.38 pursuant to Fed. R. Civ. P. 64 and Ohio R.C. § 2715.01 *et seq*. (ECF No. 92, 94, 96, 98.) Ms. Rangel intones an attachment order is needed because Defendants are selling assets and fleeing the state with the intent of defrauding her as a judgment creditor. *Id*. Defendants oppose both motions. (ECF Nos. 91, 95, 97, 99.) Each is fully briefed.

1

For the reasons that follow, the Court **GRANTS** in part and **DENIES** in part Ms. Rangel's Motion for Attorney's Fees and Costs (ECF No. 88) and holds that her Motion for Attachment (ECF No. 92) is **MOOT**.

I.  **MOTION FOR ATTORNEY'S FEES & COSTS**

Ms. Rangel's counsel requests $175,987.50 in fees, $5,219.88 in costs, $1,318.38 in liquated damages under the OPPA and post-judgment interest. Defendants focus their opposition only on Ms. Rangel's request for fees and OPPA damages. The Court begins its analysis with the attorney's fees portion of the motion before initiating its discussion of the remainder of the relief she seeks.

A.  **Standard of Review**

Section § 216(b) of the FLSA provides "[t]he court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). "[A]n award of attorney fees under § 216(b) is mandatory but the amount awarded is within the discretion of the district court" because of reasonableness requirement. *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984). Thus, entitlement to fees is not a "*carte blanche* license to overbill." *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003). Instead, a fee is reasonable if it is "adequately compensatory to attract competent counsel yet . . . avoids producing a windfall for lawyers." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (internal quotations and emphasis omitted).

The reasonableness query begins with calculating the "lodestar" figure, which is determined by multiplying the "number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004*)*. Then,

"[t]hat amount may . . . be adjusted upwards or downwards, as the district court finds necessary under the circumstances of the particular case." *Id*. The party seeking a fee award must "submit evidence supporting the hours worked and rates claimed. . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 433, (1983).

Importantly, when reviewing FLSA attorney's fees applications, the Court remains cognizant that the fee-shifting provision insures "'effective access to the judicial process'" for employees with wage and hour grievances. *Funk v. Airstream, Inc.*, No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *4-5 (S.D. Ohio Sep. 23, 2019) (quoting *G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d at 502).

The Court may also tax the following costs, provided proper documentation is supplied: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920; *see also Miller v. Food Concepts Int'l, LP*, No. 2:13-CV-00124, 2017 U.S. Dist. LEXIS 186836, at *8-9 (S.D. Ohio Nov. 13, 2017).

## B. Attorney's Fees

The Court must first determine the lodestar amount. To complete that task, the Court begins with the hourly rate analysis before turning to the reasonableness of the number of hours claimed.

### 1. Hourly Rate

In considering what constitutes a reasonable hourly rate, "[t]he appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Sykes v. Anderson*, 419 F. App'x 615, 618 (6th Cir. 2011) (internal quotations omitted). The market rate is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Gonter*, 510 F.3d at 618. Comparable skill and experience, of course, means skill and experience in the specific area of law at issue in the case. *Snide v. Disc. Drug Mart, Inc.*, No. 1:11-cv-244, 2013 U.S. Dist. LEXIS 165584, *22-25 (N.D. Ohio Oct. 30, 2013).

When considering the issue, the Court may "consider 'a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience from handling similar' requests for fees." *Northeast Ohio Coalition v. Husted*, No. 2:06-cv-896, 2014 U.S. Dist. LEXIS 137320, 2014 WL 4829597, at *12 (S.D. Ohio Sept. 29, 2014) (vacated in part on other grounds) (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011)). The fee applicant bears the burden to "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 (1984).

Attorney Coffman seeks an hourly rate of $350. He has been in practice for ten years and focuses on employment litigation. Attorney Bryant requests an hourly rate of $275. He has been in practice for six years and also concentrates on employment law. Defendants do not object to either rate being sought. Ms. Rangel provides the Court with two affidavits from employment attorneys averring that such rates are reasonable. In addition, Judge Rice recently held those amounts to be reasonable in a case involving the FLSA. *See Funk*, 2019 U.S. Dist. LEXIS 162334, at *7-8. Consequently, the Court holds $350 an hour for Attorney Coffman and $275 an hour for Attorney Bryant "are reasonable and are in line with the prevailing local market rates for attorneys with comparable skill and experience." *Id*.

**2. Hours Worked**

Attorney Coffman spent 285.1 hours on this matter. (ECF No. 88-1). Attorney Bryant requests payment for 277.1 hours of work. (ECF No. 88-2). Attorney Bryant's total excludes 25.8 hours in tacit recognition of his duty to "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Hensley*, 461 U.S. at 434; *see also* ECF No. 88-2 ¶ ¶ 56, 60. Attorney Laren Knoll, a Columbus employment attorney, opines that the 562.2 hours spent on this case were reasonable. (ECF No. 88-4 at ¶ 24.)

Defendants contend the 562.2 hours Ms. Rangel's counsel seek payment for is excessive. Specifically, they argue that the case contained a straightforward legal issue that could have been handled by Mr. Coffman alone given his skill and experience in the FLSA arena. They posit that Mr. Bryant's work was duplicative of Mr. Coffman's. They further assert that Ms. Rangel's counsel spent an excessive amount of time on the case given its low-level of complexity. And, they contend that most of the work could have been handled by an administrative assistant. Defendants offer two affidavits from Ohio employment law attorneys in support of these

arguments. (ECF Nos. 91-1, 91-2.) Both aver that a single attorney was necessary to handle the case, and they each contend that total exclusion of Mr. Bryant's time and a reduction in Mr. Coffman's fees from $99,785 to $60,000 is warranted. *Id.*

In determining the hours reasonably expended, "'[t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief requested. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.'" *Miller*, 2017 U.S. Dist. LEXIS 186836, at *18-19 (quoting *Wooldridge v. Marlene Indus.*, 898 F.2d 1169, 1173 (6th Cir. 1990)). Attorneys seeking fees must "maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case" and "should exercise billing judgment with respect to hours worked." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (internal quotation marks and citation omitted). The Court must "conclude that the party seeking the award has sufficiently documented its claim." *Id.* (internal quotations omitted).

Neither Defendants nor the Court take issue with the sufficiency of the billing records Ms. Rangel's counsel provide. So, the Court focuses on Defendants' concerns that the 562.2 hours counsel request payment for is unreasonably high. The Supreme Court directs that the district court should exclude "hours that were not 'reasonably expended'" from attorney's fee applications. *Hensley*, 461 U.S. at 434 (quoting S. Rep. No. 94-1011, p. 6 (1976)). "Cases may be overstaffed, and the skill and experience of lawyers vary widely." *Id.* "There is no precise rule or formula for making these determinations. . . . [t]he court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436-37. Determining whether the number of hours at issue warrant a reduction involves consideration of the following factors:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*H.D.V. - Greektown, LLC v. City of Detroit*, 774 F. App'x 968, 972 (6th Cir. 2019) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 n.3 (6th Cir. 1999)); *see also Hensley*, 461 U.S. at 434 n.9 (noting factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (CA5 1974) are often subsumed in initial lodestar analysis); *see also Reed*, 179 F.3d at 471 (adopting *Johnson* factors). Each element will be addressed seriatim.

*Time and labor required and novelty and difficulty of the questions presented.* As to these factors, the Court concurs with Defendants that this case presented a straightforward legal issue: whether Ms. Rangel worked overtime hours that Defendants did not compensate her for completing.

Attorneys Coffman and Bryant rely upon *Funk*, 2019 U.S. Dist. LEXIS 162334, to justify the award they seek. They represented the plaintiff in that matter. Ms. Funk's Amended Complaint alleged that Defendant Airstream, her former employer, violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, the Comprehensive Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161, the FLSA and Ohio Law. *Id*. She asserted collective and class claims for unpaid overtime under the FLSA and parallel Ohio statutes, inclusive of the OPPA. Her individual claims alleged FMLA interference and retaliation and a COBRA violation. *Id*.

Funk moved for conditional certification under § 216(b). She then pursued emergency relief against Airstream, asserting that Airstream had sent "deceptive, coercive and misleading communications to its employees" to discourage them from joining the suit. *Funk*, 2019 U.S. Dist. LEXIS 162334, at *3. The Court granted Ms. Funk's conditional certification motion and notice was sent to 1,041 members. Twenty individuals joined the suit.

Airstream made a Fed. R. Civ. P. 68 Offer of Judgment as to all counts. Ms. Funk accepted. The agreement left the issue of attorney's fees to be decided by the Court. Attorneys Coffman and Bryant sought approval for 534.7 hours at the same hourly rates being sought here for a total of $172,288.01. *Id*. *7 n.2. Airstream challenged neither the total hours nor the hourly rate, choosing instead to seek a 50% reduction by arguing, *inter alia*, that Ms. Funk's counsel would sustain a windfall should the motion be granted in full.

The Court declined to reduce the award due to the "unique circumstances" present in the case. *Funk*, 2019 U.S. Dist. LEXIS 162334, at *16. The Court characterized the case as "fairly complex litigation, involving individual and class claims brought under a variety of statutes. It also involved significant discovery. Moreover, Plaintiffs' Emergency Motion for a Protective Order, filed in response to actions Airstream took after Plaintiffs sought conditional class certification, led to protracted litigation and numerous lengthy conference calls." *Id.* *8. To illustrate, the docket reflects ten status conferences. The Court also discussed how Airstream knew its payment practices were violative of the FLSA prior to the case but took no remedial action until after Funk moved for conditional certification. Funk, 2019 U.S. Dist. LEXIS 162334, at *17-19. Accordingly, the Court found Airstream's windfall argument unavailing "under the circumstances presented" and awarded Attorneys Coffman and Bryant the full amount sought, minus a small amount for a billing error.

In contrast to *Funk*, the case *sub judice* involved one plaintiff and one straightforward FLSA and related state claim. No collective or class allegations were present in this matter; hence, notice was not issued to one-thousand individuals. Multiple differing statutes were not at issue. Paper discovery was not outside the normal parameters for a single-plaintiff, single-issue FLSA case. Only two depositions were taken. The discovery in this case was not "significant." Ms. Rangel's counsel indicated that they spent just ten hours coordinating the timing of text messages to track Ms. Rangel's overtime. (ECF No. 94 at 18). The docket reflects two status conferences.

Additionally, this case's procedural path was direct. Each side filed one dispositive motion. Ms. Rangel filed one motion *in limine* and one motion regarding jury instructions. Defendants filed two motions *in limine*. The trial took just two days and only two witnesses testified—the same individuals that were deposed. Attorneys Coffman and Bryant made no "prior knowledge" claim against Defendants. Yet, Attorneys Coffman and Bryant spent more time on this straightforward case than they did on *Funk*, a "complex" matter. Therefore, the Court finds that *Funk* supports Defendants' request for reduction of hours, not to buttress Ms. Rangel's request for full approval of her counsels' time.

By so determining, the Court notes that Defendants also argue that only one attorney was necessary to handle this case such that the total hours reflect duplication of efforts. However, Defendants do "not provide any relevant authority from this jurisdiction stating that when multiple attorneys work on a task, only one attorney can bill his or her time." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 372 (6th Cir. 2014). Moreover, Attorney Bryant declares the he subtracted 25.8 hours from his total time to account for potential duplication. (ECF No. 88-2 ¶ 60.) These facts satisfy any duplication concerns.

Defendants additionally argue that some hours should have been delegated to an administrative assistant. That contention ignores the financial reality that solo practitioners, of which both Attorneys Bryant and Coffman appear to be, may not be able to afford such help.

Based upon the above, the Court concludes that the time and complexity section of the analysis favors a reduction in the number of hours Attorneys Coffman and Bryant seek.

*Skill needed to perform the legal service properly*. The Court recognizes that FLSA matters usually necessitate attorneys like Mr. Coffman and Mr. Bryan who specialize in labor law. FLSA matters may be complex. Yet, this case is not—it involves one plaintiff and a single question of whether Defendants failed to pay Ms. Rangel for any overtime hours she worked. This factor thus indicates that a reduction is reasonable.

*Preclusion of employment by the attorneys due to acceptance of the case*. Attorneys Coffman and Bryant state that they were unable to accept additional cases in the week before and the days of trial. (ECF No. 94 at 25.) This is inherent in any litigation. Given how short the trial was, this factor tends towards a reduction.

*Customary Fee*. The hourly rate for both Mr. Coffman and Mr. Bryant is reasonable.

*Nature of fee*. Ms. Rangel's counsel accepted this case on a contingency basis. Given the "inherent risk of not recovering anything when agreeing to represent a client on a contingent fee basis," this factor weighs against a reduction. *Funk*, 2019 U.S. Dist. LEXIS 162334, at *14.

*Time limitations imposed by the client or the circumstances*. There were no temporal concerns in this matter.

*Amount involved and the results obtained*. This is the most critical factor of the analysis. *Hensley*, 461 U.S. at 436. Ms. Rangel's counsel achieved good results. The jury awarded her nearly all of her claimed damages. (Jan. 7, 2019 Rough Draft Trial Tr. 27.) Defendants argue that

the result was solid, but not substantial, because the jury did not award Ms. Rangel the entire amount she requested. (ECF No. 91 at 14.) Yet, juries hardly ever award the exact amount a plaintiff seeks.

The parties also discuss settlement their efforts *ad nauseum* in their pertinent filings. Initially, Ms. Rangel's Motion to Strike Defendants' Fed. R. Evid. 408 Disclosures (ECF No. 94 at 4) is **MOOT** because Court has considered only the portion of the discussion that the rules permit. That review reveals only that each side made reasonable efforts to settle.

Because Ms. Rangel's counsel obtained a good result, this portion of the analysis leans against a reduction in the hours being sought. It is worth stating, though, that this is just one of the factors the Court considers in performing its present analysis. *See Clark v. Shop24 Glob., LLC*, No. 2:12-cv-802, 2016 U.S. Dist. LEXIS 135760, at *11 (S.D. Ohio Sep. 30, 2016) (stating amount of success descriptor, by itself, is not determinative).

*Experience, reputation, and ability of the attorneys*. As noted, Attorney Coffman has ten years of experience in labor law, and Attorney Bryant has seven years of experience in that field. (ECF Nos. 88-1, 88-2.) Attorney Coffman has been counsel on forty wage and hour collective and class actions, while Attorney Bryant has participated in twenty-five similar matters. The Court concludes that they have a solid amount of knowledge in the FLSA arena.

That knowledge base, however, brings with it an expectation of efficiency in representation. Issues that may take less seasoned FLSA practitioners substantial time do not and should not consume the prolonged attention of experienced practitioners like Attorneys Coffman and Bryant. This is especially true in this single-plaintiff, single-issue case. *See Jarmon v. Vinson Guard Servs.*, No. 2:08-CV-2106-VEH, 2011 U.S. Dist. LEXIS 164028, at *10 (N.D. Ala. Aug. 12, 2011) (noting case presented "fairly routine issues arising under the FLSA with a single

plaintiff, and Plaintiff's counsel has substantial experience in litigating FLSA claims."). This facet of the examination therefore indicates a reduction is appropriate. *See Kritcher v. Prudential Sec., Inc.*, No. 19-1556, 2020 U.S. App. LEXIS 3814, at *6 (6th Cir. Feb. 4, 2020) (affirming 12% reduction in attorney's hours in FLSA single-plaintiff case based, in part, on knowledge base of plaintiff's counsel); *see also Clark v. Shop24 Glob., LLC*, No. 2:12-cv-802, 2016 U.S. Dist. LEXIS 135760, at *13 (S.D. Ohio Sep. 30, 2016) (holding straightforward nature of FLSA claim warranted 10% reduction in attorney's fees award).

*The "undesirability" of the case*. Ms. Rangel's counsel assert that her case was unattractive because it was a single plaintiff matter asserting FLSA claims, which typically involve low damage or settlement amounts. The Court concurs with this characterization. This element weighs against cutting counsels' hours.

*The nature and length of the professional relationship with the client*. Ms. Rangel has worked on this case with her counsel for more than two years. Still, "[t]he meaning of this factor . . . and its effect on the calculation of a reasonable fee has always been unclear, and courts applying the [*Reed*] factors typically state that this particular standard is irrelevant or immaterial." *Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 U.S. Dist. LEXIS 91745, at *25 (D. Kan. July 13, 2016) (quotation and citation omitted). Accordingly, the Court holds that "this factor, which might matter in some cases, [is] immaterial to its analysis here." *Id.* *25.

*Awards in similar cases*. Ms. Rangel's attorneys direct the Court to three cases in support of their attorney's fees request: (1) *Funk;* (2) *Clark*; and (3) *Easter v. Beacon Tri-State Staffing, Inc.*, No. 2:17-cv-00197, 2020 U.S. Dist. LEXIS 13231, at *1 (S.D. Ohio Jan. 27, 2020). Having

addressed the first in detail above, the Court examines the later two cases before making its ultimate determination on the issue of whether hours should be reduced.

Plaintiff Clark sued three defendants, including Shop24Global, his former employer, for unpaid overtime and retaliation. Judge Graham granted summary judgment against Clark on his retaliation claim. Clark's FLSA count against Shop24Global proceeded to a three-day jury trial which resulted in a $61,978.46 judgment in his favor for that claim. Post-trial, Clark sought $168,342.50 in attorney's fees for 647.9 hours of work. Magistrate Kemp reduced that amount by $32,644.12, finding some hours were "too vague, . . . too clerical in nature, . . . unreasonable given the nature of the task, . . . were spent on unsuccessful motions, . . . were already compensated, . . . or unsupported by evidence and in excess of limitations on fee awards. . . ." *Clark*, 2016 U.S. Dist. LEXIS 135760, *3. Both sides objected. Ultimately, Judge Graham imposed a 10% reduction after holding that "the time and skill required to litigate these relatively straight-forward issues counsels in favor of a slightly reduced award. Relative success tempered by an excessive number of hours expended on the litigation counsels in favor of a minor reduction." *Id.* *13.

Given that holding, Plaintiff's counsels' explanation for their reliance on *Clark* is curious.[1] After noting that Clark's counsel sought payment for 647.9 hours, Plaintiff's counsel

---

[1] Ms. Rangel mentions *Clark* for the first time in her Reply brief, so Defendants did not have an opportunity to present their arguments *contra* on that case. "This Court has explained time and again that 'a reply brief is not the proper place to raise an issue for the first time.'" *Ross v. Choice Hotels Int'l, Inc.*, 882 F. Supp. 2d 951, 958 (S.D. Ohio 2012) (quoting *United Tel. Co. of Ohio v. Ameritech Servs., Inc.*, No. 2:10-cv249, 2011 U.S. Dist. LEXIS 1746, 2011 WL 53462, at *3 n. 2 (S.D. Ohio Jan.7, 2011)). Although the Court is not required to consider *Clark* under these circumstances, the Court does so in this instance because *Clark* counsels against Ms. Rangel's argument seeking full fees such that no prejudice results to Defendants. *See Culy Constr. & Excavating, Inc. v. Laney Directional Drilling Co.*, No. 2:12-cv-4, 2012 U.S. Dist. LEXIS 79575, 2012 WL 2071804, at *4 (S.D. Ohio June 8, 2012) (refraining from considering argument first raised in a reply memorandum); *Cooey v. Strickland*, No. 2:04-cv-1156,2010 U.S.

note that they seek payment for 562.2, such that their lesser request is inherently reasonable. (ECF No. 94 at 32-33.) Judge Graham, however, reduced the *Clark* award to a 537.9 hourly predicate based upon the straightforward nature of the case. That ultimate total, which accounted for a longer trial, was less than the 562.2 hours Plaintiff's counsel presently seek. Consequently, the Court finds Ms. Rangel's citation to *Clark* to be unpersuasive, especially because the Court finds above that her case, too, was straightforward.

Ms. Rangel's reliance on *Easter* fares no better. Plaintiff Easter asserted claims under the FMLA and the Americans with Disabilities Act ("ADA") and a concurrent state associational discrimination claim against his employer, Defendants Beacon Tri-State Staffing, Inc. and C*MAC Transportation, LLC. *Easter*, 2020 U.S. Dist. LEXIS 13231, *2. Easter dismissed his age discrimination counts, and the parties settled his FMLA count save for the issue of attorney's fees. Easter's counsel sought $337,500, while defendants urged an award of $137,500. *Id*. Relevantly, Defendants maintained that the smaller sum was warranted because Easter did not achieve full success and Easter's counsel billed an "exorbitant" number of hours. *Id*. *7.

Judge Marbley declined to accept defendants' limited success argument, holding that the age discrimination claims shared a "common set of facts" with Easter's FMLA count. As a result, Judge Marbley found that the lone deposition that defendants claimed was excessive was, in fact, necessary and relevant. *Id*. *12. He thus awarded Easter's counsel $337,500, the full amount requested.

Ms. Rangel urges this Court to follow *Easter* and award her counsel the entirety of the fees and costs they seek. She contends that because Judge Marbley held that the 898.6 hours counsel expended in that matter were reasonable, this Court should automatically find her

---

Dist. LEXIS 81841, 2010 WL 3212079, at *12 (S.D. Ohio Aug.12, 2010) (foregoing consideration of argument improperly raised for first time in reply memorandum).

counsels' request for 562.2 hours reasonable as well because *Easter* did not proceed to trial and her case did. (ECF No. 96.) Defendants respond that *Easter* initially involved three distinct claims, two of which were extensively briefed at the summary judgment stage. (ECF No. 97; *see also Beacon Tri-State Staffing, Inc*., No. 2:17-cv-00197, 2020 U.S. Dist. LEXIS 13231, at *12 (S.D. Ohio Jan. 27, 2020)). Defendants additionally highlight the billing disparity between Easter's two attorneys—the lead attorney billed for 860.2 hours while co-counsel billed for only 38.4 hours—to aver that Attorney Coffman's 285.1 hours and Attorney Bryant's 277.1 hours of work are clearly excessive. *Id*.

The distinctions between *Easter* and this case are significant. Perhaps most striking is the similarity in hours sought between Attorneys Coffman and Bryant. In addition, *Easter* does not involve the FLSA. And while this matter primarily involved a single, uncomplicated issue, *Easter* was more complex. Supporting that characterization is the fact that the *Easter* Plaintiff took eleven depositions, yet Ms. Rangel took only two. Hence, the Court finds Ms. Rangel's citation to *Easter* unpersuasive.

In sum, a majority of the factors, as well as relevant caselaw, mitigate against finding that 562.2 hours is reasonable under the current facts. The Court therefore determines that a reduction is appropriate under *Kritcher*, *Funk* and *Clark*. When arriving at that determination, the Court remains acutely aware that "a reduction in attorney fees [awarded to a prevailing plaintiff] is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Isabel v City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005). The Court's analysis *supra* highlights the presence of such factors here and is underscored by the Court's "unmatched familiarity with the record, the parties, and the claims at hand, because it has managed the

litigation over time." *Dean v. F.P. Allega Concrete Constr. Corp.*, 622 F. App'x 557, 563 (6th Cir. 2015) (Bouie Donald, J. dissenting).

When arriving at the number of hours to be deducted, the Court need not "achieve auditing perfection[.]" *Fox v. Vice*, 563 U.S. 826, 838 (2011). Indeed, "[t]here is no precise rule or formula for making these determinations." *Hensley*, 461 U.S. at 436. In lieu of line-by-line reductions, the Court "may implement an 'across-the-board reduction by a certain percentage.'" *Project Vote v. Blackwell*, No. 06-CV-1628, 2009 U.S. Dist. LEXIS 34571, 2009 WL 917737, at *6 (N.D. Ohio Mar. 31, 2009) (citing *Alliance Int'l, Inc. v. United States Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005)). The Court may "take into account [her] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

With those considerations in mind, the Court holds that a 10% across-the-board reduction in the number of hours being sought is necessary. That reduction serves the dual purpose of awarding a reasonable fee free from windfall status that attracts competent counsel in similar FLSA matters going forward. The 10% figure also accounts for the concessions Attorneys Coffman and Bryant have made in not seeking renumeration for post-judgment filings. Indeed, without those downward adjustments, the Court's reduction would have been higher.

That reduction yields a total of 256.6 hours for Mr. Coffman. Multiplying those hours at Mr. Coffman's $350 hourly rate equals $89,810. The Court's 10% reduction in Mr. Bryant's time results in a total of 249.4 hours. Multiplying those hours at Mr. Bryant's at $275 hourly rate equals $68,585. Thus, the Court awards Ms. Rangel's counsel a total of $158,495 in reasonable attorney's fees.

### C. Costs

Plaintiffs' counsel also seeks reimbursement of $5,219.88 in out-of-pocket costs and expenses related to the suit, including depositions, transcripts, postage and investigatory costs. Defendants do not object to this request. The Court deems the request to be reasonable. Accordingly, Ms. Rangel's counsel is awarded $5,219.88 in costs and expenses.

### D. Interest

Ms. Rangel does not request pre-judgment interest. (ECF No. 88 at 28.) She does seek post-judgment interest from the January 9, 2020 entry of judgment. Defendants do not object. "[C]ourts routinely award post-judgment interest pursuant to 28 U.S.C. § 1961 in FLSA cases. . . ." *Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 199 (D.D.C. 2016) Accordingly, the Court **GRANTS** Ms. Rangel's motion for post-judgment interest from January 9, 2020 at the correct statutory rate pursuant to 28 U.S.C. § 1961.

### E. Ohio's Prompt Pay Act

Ms. Rangel's final count is for liquidated damages under the OPPA, which states:

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages payable *and no contest*[,] court order or *dispute* of any wage claim including the assertion of a counterclaim *exists accounting for nonpayment*, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

O.R.C. 4113.15(B). She presently requests that the Court award her additional liquidated damages in the amount of $1,318.38, which is 6% of the jury's $21,973 base award. (ECF No. 88 at 34-35.)

17

Ms. Rangel asserts that she is automatically entitled to OPPA damages because the jury found that Defendants violated the FLSA by failing to pay her overtime. She cites to *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385 n.1 (6th Cir. May 19, 2016), for the proposition that an OPPA claim "rises and falls" with a FLSA claim. Such reliance is short sided because *Craig's* determination on that topic is premised upon one important fact not present here: the parties and the trial court *agreed* as to the relationship of those counts. *Craig*, 823 F.3d at 385 n.1; *see also Parks v. Cent. USA Wireless, LLC*, No. 1:17-cv-448, 2019 U.S. Dist. LEXIS 167502, at *15 (S.D. Ohio Sep. 29, 2019) ("Defendants do not dispute the general proposition of law that a federal overtime violation translates into a state prompt pay violation."); *see also Brandenburg v. Cousin Vinny's Pizza*, LLC, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *4-5 (S.D. Ohio Nov. 25, 2019) (noting OPPA claim *can* "rise and fall" with an underlying violation of another wage requirement).

There is no such agreement here. Instead, Defendants argue that no OPPA claim exists because they contested the number of hours Ms. Rangel worked. (ECF No. 91 at 16.) That qualifies as a dispute under the OPPA. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 577 (6th Cir. Aug. 5, 2009) ("We see no reason why a factual dispute over the hours worked could not suffice as a dispute accounting for nonpayment."); *see also Sutka v. Yazaki N. Am., Inc.*, 256 F. Supp. 3d 677, 682 (E.D. Mich. 2017) (stating *O'Brien's* OPPA holding remains binding). Indeed, the trial would not have taken place absent the parties' dispute about Ms. Rangel's entitlement to overtime compensation.

The OPPA "expressly applies only to wages that are not in dispute." *Lower v. Elec. Data Sys. Corp.*, 494 F. Supp. 2d 770, 775 (S.D. Ohio 2007) (citing Ohio Rev. Code § 4113.15(B)); *see also Steele v. Medlab Ohio*, No. 09CVH-05-7252, 2010 Ohio Misc. LEXIS 7833, at *5 (Ct.

Com. Pl. July 15, 2010) (same); *see also Terry v. Pro-Mark Contracting, LLC*, No. 14-cv-2542, 2016 U.S. Dist. LEXIS 81074, 2016 WL 3421399, at *6 (N.D. Ohio June 22, 2016) (finding that "because Defendants dispute[] the Plaintiffs' wage claims, the [OPPA] does not create a claim for liquidated damages in this case"); *Jones v. Select Industries Corp.*, No. 04-cv-152, 2006 U.S. Dist. LEXIS 40019, 2006 WL 1705201, at *6 (S.D. Ohio June 16, 2006) (granting summary judgment to employer defendants where it was undisputed that the plaintiff had not followed the procedures that would entitle her to bonus wages, because "where the employer disputes the wage claim, no liquidated damages are due"). Because Ms. Rangel's wages were in dispute, she is not entitled to liquated damages under the OPPA. This section of her Motion for Attorney's Fees and Costs is **DENIED**. (ECF No.88.)

## II.  MOTION FOR PREJUDGMENT ATTACHMENT

Because the Court has adjudicated Ms. Rangel's Motion for Attorney's Fees and Costs (ECF No. 88), her Motion for Prejudgment Attachment (ECF No. 92) is **MOOT**.

## III.  CONCLUSION

Ms. Rangel's Motion for Attorney's Fees and Costs is **GRANTED** in part and **DENIED** in part. (ECF No. 88). The Court awards her counsel $158,495 in attorney's fees, $5,219.88 in costs and expenses, and post-judgment interest from January 9, 2020.

Ms. Rangel's Motion for Prejudgment Attachment is **MOOT**. (ECF No. 91.)

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**